Good morning. May it please the Court, my name is Jacob Hafner and I'm counsel for Dr. Richard Chudacoff. Preliminary, I would like to reserve five minutes of time for rebuttal. Dr. Chudacoff moved his family from Houston, Texas, where he was an adjunct faculty member and prominent, minimally invasive gynecological surgeon, to Las Vegas because he wanted to be closer to his mother as she progressed in her years. As part of his transition, he found an academic position with the University of Nevada School of Medicine, a position which required him to operate and teach residents at the local county hospital, UMC. Almost immediately, Dr. Chudacoff realized that he was not in Texas anymore. The skills of the residents in Las Vegas were not the same as those of Baylor, his previous academic institution. He believed that the problem was rooted in the low census numbers of surgeries at UMC, specifically laparoscopic surgeries, what he was there to teach, and in which the residents participated. While he raised his concerns with his colleagues on the faculty, he also offered some solutions, even offering himself to call insurance companies to facilitate the complicated task of obtaining approvals for various procedures in an attempt to increase the numbers performed. I think you can use your time any way you want. Your time is going very, very quickly. It's going to go by very fast, and I think the Court is familiar with the facts here. So if you want to get right straight to the issues, we're very comfortable with that. I appreciate that, Your Honor. Ultimately, though, Dr. Chudacoff had some issues with some of the other faculty members and some of the people at the medical staff, and numerous due process right violations occurred in the actions. I have an issue that concerns me, upon which I may be making a decision, if you don't mind. The appeal that took place was from a motion for reconsideration. That's clear in the record. If it was a motion for reconsideration, of course, it's different from appealing from a judgment, and our standard of review is abuse of discretion. What's your response to that? Your Honor, it was our intent to appeal the motion to dismiss. Of course. That was our intent. And we believe that the briefs and the issues that we stated in the docketing statement and the like tried to make that clear. I understand all of that. But, you know, jurisdiction in the Federal court, at least, is something you either have or you don't have, and you have it dependent upon how you function. Now, if the lawyer makes a mistake, you can always go back and correct them in the So regardless of your intent, the fact is that you appealed from the denial of the motion for reconsideration. So that would cast our review, instead of a de novo review, into an abuse of discretion review under the cases, right? It would if this Court's only review would be the motion for reconsideration. So we're asking, and it was our intent, that the motion, that the appeal be for the motion to dismiss. Do you have a case that says that we guide our jurisdiction by the intent of counsel or by the act of counsel? Your Honor, I can't tell you that answer. Okay. All right. It's a point that concerns me, and I – maybe you can – maybe we can get to it later. Thank you. Your Honor, I think part of the complication is that there were so many moving wheels going on at the same time, and we were trying to preserve judicial resources. I know. It was amazing to me. You've got the same case in Judge Reed's department that you have in Judge Jones' courtroom. And in any other district court, when you file the second one, it would go to the low number rule, and it would go back to Judge Reed, and Judge Jones keeps it. And I don't – it was difficult for me to find out what was really going on. And that was part of the problem here, is in the middle – a month after Judge Jones dismisses this case, this Court reverses Judge Reed's decision. It says that State action is clearly present. Remands Chutakoff won. It's even worse than that. When you appeal from Judge Reed, jurisdiction leaves the district court. The court is not each one of the judges, district judges. The court is the district of Nevada. So the jurisdiction from your case leaves the district court when you appeal from the Reed. I don't know where the jurisdiction ever came from for Judge Jones. We have the jurisdiction up here in the court of appeals. Well, that touches on to some of the other issues in this appeal, Your Honor, respectfully. And that's that there were multiple due process violations in this case. And as this Court has said in U.S. v. Liquidators of European Federal Bank not that long ago, that different facts at different times would constitute or allow different cases. And while the parties are the same to some extent between Chutakoff I and Chutakoff II, the facts and the timing were different. Chutakoff I involved the summary or, excuse me, the suspension which was not summary but treated as a summary suspension of Dr. Chutakoff's privileges in May of 2008. However, what happened then is that there were additional issues such as a March 2009 hearing on what Dr. Chutakoff thought were clinical allegations. And then they come out at the end saying, oh, he can't teach residents. We never knew that his teaching ability was an issue for that hearing. There was a clear due process violation. And that was a separate and distinct due process violation from the one in Chutakoff I because Chutakoff I never dealt with his teaching ability. And so what happened then is that decision comes out in April from the hearing. It gets affirmed despite our vigorous argument to the Board of Trustees that, you know, there's a separate due process violation here. He never knew that teaching was an issue. And it goes and discovery in Chutakoff I becomes closed in May of 2009. At the same time that the trustees affirm the decision. And so while it would be convenient and probably appropriate to consolidate the two cases, it does not mean at all that the separate due process violations that occurred do not give right to a separate cause of action which should and were in this case brought in a separate action. I can see your point there. And Judge Jones was talking about that. He continued to talk in the record in these ways of whether or not it should be consolidated with Judge Reed's case. But no decision. I keep reading through and waiting for the shoe to drop, and it never drops. So I see your point there. And interestingly enough, Chutakoff I now is in Judge Jones's chambers and department because it was transferred from Judge Reed recently. So, yes, this is a procedural quagmire, and I agree with that. It may very well be, but it's no accident that it is. That's why you retain. So you can guide us in the direction we need to go. And that's my meager attempt at arguing this case before you, Your Honor. I think that's what Judge Wallace was trying to help you see, what the case before us is. Do you know what the question is before us on this record? My belief of the question when we filed our document statement was whether or not it was appropriate under issue preclusion to dismiss the first, Chutakoff II, and then whether or not claim preclusion would apply. And so we briefed it as we were talking about the motion to dismiss. That's been our approach from the very beginning. And not until Ms. Mercado's brief was it raised that, no, we should only be dealing with the motion for reconsideration. Well, we've interrupted you. You go ahead with your argument. There's one last point that I'd like to make before I reserve time is in trying to consider the only argument that may be made is that the destruction of Dr. Chutakoff's career is the endpoint damage. And so the question is, is how do you distinctly show causation between Chutakoff I and Chutakoff II to the damages in this case? And if anywhere, that's where the argument may be made that it's really one case because the damages are the same. However, we'd like to point the Court's attention to the discussion that the Supreme Court made in Carey v. Pifus where they said that because the right to procedural due process is quote, unquote, absolute, in the sense that it does not depend on the denial of procedural due process, should be actionable for nominal damages without proof of actual injury. And so even if all of the damages for the loss of career and the emotional pain and suffering are attributed to Chutakoff I, Chutakoff II still should enable us to seek nominal damages as well as punitive damages, if so appropriate, based on Carey v. Pifus and its progeny. At that point, if there are no further questions, we'd like to reserve the rest of the time. You may do so. Thank you. Good morning. Lynn Hansen on behalf of all the defendants but Dr. Curry. Justices, you have raised the questions that we saw before we were briefing this appeal. First, the appeal is only from the motion for reconsideration. In abundance of caution, we briefed all issues that were discussed by Judge Jones, who now is in control of both Chutakoff I and Chutakoff II. The partial reversal by the Ninth Circuit did not affect the fact that these events all occurred prior to Judge Reed's order granting summary judgment. So all of these issues could have been included in Chutakoff I. And why did they have to be included in Chutakoff I? Because otherwise we're going to be relitigating the same case and now two cases. But it's not the same case. Every time there's a new proceeding, that's a different due process. It may stem from the same misapprehension. It may stem from the same errors. It may not be error at all. But every time that there's another hearing held and notice isn't given or the final is not properly constituted is a separate violation of the due process clause. Yes, but they all occurred during the pendency of Chutakoff I and not prior to Judge Reed's order. So that case could have been amended. What principle tells us, then, that they had to be filed in that suit or barred? I think the fact that the defendants are similar, not exactly the same, but were known to the plaintiff at all times. What principle of law do we have that tells us that they had to be filed? Not that they could have been filed, but that they must have been filed or forfeited. I don't know that they must have been filed. But that's the issue. But for judicial economy, it would have made more sense to have one case. Okay. But more sense doesn't tell us, then, that they have to be dismissed because he didn't file it. They can only be dismissed if they had to file them, not if it was convenient if they had filed them. We don't dismiss claims because somebody was inconvenient to the court. But they are seeking the same damages. So we have two parallel cases seeking the same damages. Which suggests that the cases should have been consolidated. And Judge Jones considered that. But after we briefed our motion for summary judgment. Did you move for consolidation? No. The plaintiff moved for consolidation. Okay. And what happened to that motion? It was denied. What's he supposed to do at that point? At that point, he ruled on our motion for summary judgment on issue preclusion and claim preclusion. Okay. I mean, it seems a little strange that the plaintiff would say, I think these two cases ought to be put together. And the judge says, no, you can't put them together. And what's more, you're now barred because you filed two separate cases. And that's because all of those events could have been consolidated by amendment of the first complaint. Okay. Which brings me back to the question I asked you, and you didn't give me an answer that was satisfactory. So let me try the question one more time. What case or principle of law or rule of Federal procedure required the plaintiffs to bring all of these claims in one case? I think that there's not a rule of law, but there's a logic to that, in that then the defendants would have been all consolidated in the same case, could have litigated at one time, one trial, and all the claims are seeking the same damages. It would have been wonderful to have it done that way, but it wasn't. So we have to sort it out. Judge Jones tried to work his way through that and decided that Monterey gave him the – Monterey case gave him the way to do that. But Monterey doesn't apply, it seems to me. The plaintiffs didn't know about the falsification charges. This is something new that came along. And I think a strong case can be made that Judge Jones was in error. He should have applied the majority rule. I thought he did apply the majority rule, because the majority rule says that the claim should arise before the original complaint in any supplemental pleadings, which obviously refers to amendments of the complaint. And that's what he rested on. He said since these events took place prior to Judge Reed's order, it could have been amended into this complaint and saved judicial resources and not had two – for a while we had two judges that were reviewing the same issues, and it could have come with different results. Was there a falsification issue in the Reed case? Yes, that was raised in the Reed case, but it was also raised in the complaint filed in August of 2009. And that hearing took place in July – actually, July 2nd of 2009, and Judge Reed's order didn't come out until November 4th of 2009. Well, if the falsification issue was already in Judge Reed's case, it was already before the court. I believe it was, Judge. I think all of these hearings are in Chudakoff 1. And that's why filing the second complaint made no sense, except that they – the Fair Hearing members. And? And he could have added that in Chudakoff 1. He knew the Fair Hearings – the plaintiff's counsel has gone to every Fair Hearing. So he knew all the Fair Hearing members for any hearing that was had on Dr. Chudakoff's case. So there wasn't – it wasn't like he didn't know that they were around. It could have been added in Chudakoff 1 at the beginning or at any time during the pendency of the case before the final determination. Is there any further questions? I don't think so. Thank you very much. Okay. Ms. Mercado? Yes, Your Honor. May it please the Court, Alice Mercado for J. Dillon Curry. First of all, I'd like to thank the Court for accommodating my situation. I really appreciate the courtesy that's been granted by the Court to me. Secondly, I wanted to inform the Court – I want to get a vote on the argument, but honestly, I have reached a tentative settlement with counsel for Dr. Chudakoff, and I just wanted to inform the Court we just reached this yesterday. So I wanted to appear before the Court to make sure that all the facts are straight and to appear should the Court have any questions. Okay. So as far as you're concerned, Dr. Curry is now out of the case? Yes. Okay. So there's no – you have no further argument then? That's correct, Your Honor. Okay. Well, thank you very, very much. Thank you. All right. Mr. Haffner, you have time reserved. Very successful argument. Your Honor, I want to raise a couple – a few issues. First of all, we tried to amend the complaint. We tried to let Judge Reed know what was going on. We asked for injunctions to stop these ongoing violations of Dr. Chudakoff's due process rights, and they were – ignored's a strong word, but not responded to in a timely manner. This is in the Reed case? In the Reed case, Chudakoff 1. You know, and the falsification issue, Ms. Hansen says the hearing occurred on July 9th – excuse me, July 2009. Discovery had closed and all of the dispositive motions were finished or about to be finished with their full briefing at that point. And what's interesting is we already had a motion for leave to amend on a technical issue pending before the Court from, I believe, April or March, which hadn't been responded to. To which this Court in the Reed – in the Reed-Chudakoff 1 case said that refusing Chudakoff leave to amend a technical pleading error would run contrary to Rule 15a's intent. Chudakoff must be permitted to amend. It wasn't like we weren't trying to get this before Judge Reed or trying to amend our complaint or trying to consolidate and preserve judicial resources. The problem is, is that we had no opportunity to do so because the Court wouldn't allow us to. And then I saw the unfortunate spiraling of Dr. Chudakoff's career, ultimately now his family life, and I did everything I could to try to get the injustices heard, which is why on these separate due process violations, we brought them in a separate matter, separate filing at the end of July. It's interesting. It was post-Twombly, and we were so concerned about having a light complaint that we put so many facts into that complaint. It was 88 pages, and I think it had 652 paragraphs. And then Judge Jones kicked it out, saying, it's too informative. And so we're just scratching our heads trying to figure out how to show and advocate for Dr. Chudakoff, who at this point has lost everything. And it's this. Let me add. That's helpful, but this would help me more. I'm trying to figure out when the alleged falsification of his credentials, when that came up in relationship to the appeal from the Reed case and the filing of the Jones case. In the first fair hearing that Dr. Chudakoff had, it was remarkably September 11, 2008. And on that fateful night, at the – in the middle of the hearing, these new allegations appeared that Dr. Chudakoff falsified his application. Okay. Just tell me where it is in relationship to the Reed – the status of the Reed case and Jones case at that time. At that time, Reed case was going on. Jones case hadn't been filed. Was Reed on appeal, or was it in the trial? No. Reed – it was still going through standard discovery and the like. And what happened was the – basically, the MEC said at that point that wasn't before them, so they didn't rule on it. And then they brought them – these allegations again later, and we asked for a hearing on those allegations, which didn't get scheduled until July, which at that point, discovery was closed. And hearing at Reed before the court or a hearing at the university? A hearing before the university. So the problem was, was the actual due process violations that relate to Chudakoff 2 did not occur until discovery was closed in Chudakoff 1, and it occurred about four months before the case was dismissed on summary judgment. And I'm not saying this is – this is positive. I'm just trying to understand the record. Did you move at that time to open discovery? We did not, Your Honor, because what we did is we took that due process violation from those hearings and the due process violations from the second set of hearings and put them into the second complaint, which we filed, which became assigned to Judge Jones, which is this case. Okay. It would help me if you tell us precisely what you – what relief you think you're entitled to on these facts at this juncture. May I ask a follow-up question? You may do whatever you like, but sooner or later, you're going to wish you had answered the question. I want to be responsive. Ultimately, in both these cases, we're looking for compensatory damages for the loss of Dr. Chudakoff's career, emotional pain and suffering, as well as punitive damages, all of which we believe are available to us. If, however, Chudakoff 1 and Chudakoff 2 don't get – becomes consolidated and we are able to receive compensatory for the loss of his career from Chudakoff 1, if we could ever get to trial, then, obviously, we can't get double recovery and we would simply look for nominal damages and perhaps punitive for the Chudakoff 2 case. That's the relief you're looking for here in this appeal. I'm sorry, Your Honor. I'm asking that you reverse the motion to dismiss, send this back to the district court for further proceedings, and that's what we're asking for. All right. Okay. Thank you, counsel. Thank you. We thank all counsel for the argument. Chudakoff is completed.
judges: Wallace, Farris, Bybee